# HOENINGHAUS *v.* UNITED STATES.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 341. Argued January 11, 1899. — Decided January 30, 1899.

Under the provisions of paragraph 387 of the act of July 24, 1897, and section 7 of the act of June 10, 1890, as amended by section 32 of the act of July 24, 1897, the merchandise in suit, being certain woven fabrics in the piece composed of silk and cotton, was subject to an ad valorem duty or to a duty based upon or regulated by the value thereof.

An additional duty of one per centum of the total appraised value of such merchandise for each one per centum that such appraised value exceeded

the value declared in the entry, as applied to the particular article in such invoice so undervalued, accrued according to the provisions of section 7 of the act of June 10, 1890, as amended by the act of July 24, 1897.

ON September 15, 1897, Frederich Hoeninghaus and Henry W. Curtiss imported, at the port of New York, certain woven fabrics in the piece, composed of silk and cotton. Such fabrics were provided for in paragraph 387, schedule *d* of the tariff act of July 24, 1897, which contains an elaborate scheme of specific duties for goods of this character, the rates varying from 50 cents to $4.50 per pound, depending upon the weight of the fabric, the percentage of silk contained in it, its color, its mode of manufacture, etc.; and concludes with a provision which reads as follows: "But in no case shall any of the foregoing fabrics in this paragraph pay a less rate of duty than 50 per centum ad valorem."

The appraiser returned the merchandise as manufactures of silk and cotton in the gum — silk under 20 per cent; and the collector assessed upon the merchandise a duty of 50 cents a pound, under the paragraph above mentioned. On the last item of the invoice the appraiser increased the valuation made in the invoice to make market value, thus making the appraised value exceed the value thereof declared in the entry. Thereupon the collector levied an additional duty of 1 per centum of the total appraised value for each 1 per centum that said appraised value exceeded the value declared on said item in the entry, under the provisions of section 32 of the act of July 24, 1897, which is in the following terms:

"That the owner, consignee or agent of any imported merchandise which has been actually purchased, may, at the time when he shall make and verify his written entry of such merchandise, but not afterwards, make such addition to the entry to the cost or value given in the invoice or *pro forma* invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States in the principal markets of the country from which the same has been imported; but no such addition shall be made upon entry to the

invoice value of any imported merchandise obtained otherwise than by actual purchase; and the collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised; *and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected and paid, in addition to the duties imposed by law on such merchandise, an additional duty of one per centum of the total appraised value thereof for each one per centum that such appraised value exceeds the value declared in the entry,* but the additional duties only apply to the particular article or articles in each invoice that are so undervalued, and shall be limited to fifty per centum of the appraised value of such article or articles. *Such additional duties shall not be construed to be penal and shall not be remitted,* nor payment thereof in any way avoided, except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback : Provided, that if the appraised value of any merchandise shall exceed the value declared in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles in each invoice which are undervalued : Provided, further, that all additional duties,

penalties or forfeitures, applicable to merchandise entered by a duly certified invoice, shall be alike applicable to merchandise entered by a *pro forma* invoice or statement in the form of an invoice, and no forfeiture or disability of any kind incurred under the provisions of this section shall be remitted or mitigated by the Secretary of the Treasury. The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value."

Thereupon the importers filed a protest, claiming that said merchandise, having regard either to its invoice, entered or appraised value, was not subject to an ad valorem duty or to a duty based upon or in any manner regulated by the value thereof, but on the contrary was subject only to a specific duty.

The board of general appraisers, under the provisions of section 14 of the act of June 10, 1890, affirmed the decision of the collector, and held that such goods were properly subject to the additional duty imposed under section 7 of the act of June 10, 1890, as amended by section 32 of the tariff act of July 24, 1897.

From this decision of the board of general appraisers the importers appealed to the Circuit Court of the United States for the Southern District of New York, and after, in pursuance of an order of said court, the board of general appraisers had made a return of the record and proceedings before them, that court affirmed the decision of the board of general appraisers. From the judgment of the Circuit Court an appeal was taken to the Circuit Court of Appeals for the Second Circuit; and that court thereupon certified to this court the following questions of law:

"First. Under the provisions of paragraph 387 of the act of July 24, 1897, and section 7 of the act of June 10, 1890, as amended by section 32 of the act of July 24, 1897, was the merchandise in suit subject to an ad valorem duty, or to a duty based upon or regulated in any manner by the value thereof?

"Second. Did the additional duty of one per centum of the total appraised value of said merchandise for each one per centum that such appraised value exceeded the value declared in

the entry, as applied to the particular article in said invoice undervalued as aforesaid, accrue according to the provisions of section 7 of the act of June 10, 1890, as amended by section 32 of the act of July 24, 1897 ? "

*Mr. W. Wickham Smith* for Hoeninghaus. *Mr. Charles Curie* was on his brief.

*Mr. Solicitor General* for the United States.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The tariff legislation in question recognizes three classes of merchandise subject to duty. One is where the duties are purely specific, another where the duties are wholly based on valuation, and the third where the duties are "regulated in any manner by the value thereof."

All importations of merchandise must be accompanied with an invoice, stating the cost or market value. The third section of the act of June 10, 1890, c. 407, 26 Stat. 131, provides that all such invoices shall have endorsed thereon a declaration signed by the purchaser, manufacturer, owner or agent, setting forth that the invoice is in all respects correct and true, and was made at the place from which the merchandise is to be exported to the United States; that it contains, if the merchandise was obtained by purchase, a true and full statement of the time when, the place where, the person from whom the same was purchased, and the actual cost thereof, and, when obtained in any other manner than by purchase, the actual market value or wholesale price thereof at the time of exportation to the United States in the principal markets of the country from whence exported; that such market value is the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets, and that it is the price which the manufacturer or owner making the declaration would have received, and was willing to receive, for such merchandise sold in the ordinary course of trade, in

the usual wholesale quantities; the actual quantity thereof; and that no different invoice of the merchandise mentioned has been or will be furnished to any one; that, if the merchandise was actually purchased, the declaration shall also contain a statement that the currency in which such invoice is made out is that which was actually paid for the merchandise by the purchaser.

The 7th section, as amended by section 32 of the act of July 24, 1897, provides that the importer, at the time he makes his entry, may make such addition to the cost or value given in the invoice as in his opinion may raise the same to the actual market value or wholesale price of such merchandise in the principal markets of the country from which imported; but no such addition shall be made to the invoiced value of any imported merchandise obtained otherwise than by actual purchase.

These and other provisions contained in the acts of June, 1890, and July, 1897, compel us to perceive the importance attached by Congress to the obligation put upon the importer to furnish the appraisers and the collector with a true valuation of the imported merchandise; and also the care taken to relieve the importer from a hasty or ill-considered valuation, contained in the invoice, by giving him an opportunity to raise such valuation by voluntarily making such addition thereto as to bring the same to the actual market value, and by providing for an appeal by the importer, if dissatisfied with the appraisement, to the board of general appraisers, and from the decision of the board to the courts.

The contention on behalf of the importers is, in effect, that there are only two classes of merchandise to be considered — one where the duties are purely specific, and where it is claimed no appraisement is required and none is made, and the other where the merchandise is subject to an ad valorem rate of duty; and that the merchandise in question in this case belongs to the former class.

Without deciding whether, even in the case of an importation of merchandise subject only to a specific duty it is lawful to dispense with an appraisement, our opinion is that, in find-

ing the duty properly assessable upon this merchandise, it was obligatory on the government officials to inquire into its value, and that therefore the duty was one regulated in some manner by the value thereof. The fact that it turned out, in the present case, that the goods did not pay a less rate of duty than fifty per centum ad valorem, did not relieve the appraiser from inquiring into and determining the value of the goods. And if it was the duty of the appraiser, in order to enable him to fix the duty, to inquire into the value of the imported merchandise, he was entitled to the aid afforded him in such an inquiry by the production of a true and correct invoice.

We cannot accept the contention of the importers that, where articles of merchandise are entered and appraised, the inquiry whether the appraised value exceeds the entered value is immaterial, unless, as a result of such inquiry, such articles have imposed upon them ad valorem duties.

The importers had no right to determine for themselves in advance whether a specific duty or an ad valorem duty should be levied. The duty was to be regulated by the value of the goods. A duty at least equivalent to an ad valorem duty of fifty per centum had to be levied, and to determine what duty was leviable it was necessary for the collector and appraisers to be truthfully advised of the value of the goods.

It is urged that, as specific duties were actually assessed in the present case, it therefore appears that the importers were not benefited by the undervaluation; that the revenue has not and could not suffer anything by the undervaluation; and that a mere difference of opinion between the importer and the appraisers, as to the value of the goods, should not subject the former to an additional duty.

But what might seem to be the hardship of such a case cannot justify the appraisers or the courts in dispensing with the requirements of the statutes. The meaning and policy of the tariff laws cannot be made to yield to the supposed hardship of isolated cases. Nor is it apparent that the enforcement of the statutory requirements can be justly termed a hardship to importers who take the risk of an undervaluation. The bur-

then of furnishing a true and correct invoice, in such a case, is
no greater than that imposed on other importers where goods
are confessedly within the category of goods subject to an ad
valorem assessment.

The administration of such laws cannot be narrowed to a
consideration of every case as if it stood alone, and as if the
only question was whether there was an actual intention to
defraud the government. Wide and long experience has re-
sulted in the command that all importations of merchandise
must be accompanied with a true and correct invoice, stating
the cost or market value. Like other importers, the present
appellants must comply with this command, and if they have
failed to do so, they must be held to be subject to the addi-
tional duty imposed by the statute. If the statutory regula-
tions are found to be too stringent, the remedy cannot be found
either in the courts whose duty is to construe them, or in the
executive officers appointed to carry them into effect, but in
Congress.

We have been referred to no decision of this court directly
applicable to the case in hand, but *Pings* v. *United States*, 38
U. S. App. 250, is cited. That was a case arising under the
tariff act of October 1, 1890, c. 1244, 26 Stat. 567, where gloves
were imported into the port of New York and were dutiable
at $1.75 per dozen, unless their value exceeded $3.50 per dozen,
in which case they would be dutiable at fifty per centum ad
valorem. The appraiser advanced their value in excess of ten
per centum of the value declared in the entry, and the pro-
priety of this advance was not questioned. The appraised
value, however, was not in excess of $3.50 per dozen. The
collector held the merchandise liable to the additional duty
prescribed by section 7 of the Customs Administration Act of
June 10, 1890. The importer's contention, that the additional
duty should not be exacted because gloves of the kind im-
ported pay a specific duty, and because the advance, although
in excess of the ten per centum, was not sufficient to require
him to pay the ad valorem duty exacted by the last proviso
of paragraph 458 of the tariff act of October 1, 1890, was sus-
tained by the board of general appraisers. But the Circuit

Court held otherwise, and on appeal the Circuit Court of Appeals for the Second Circuit affirmed the decision of the Circuit Court. The Court of Appeals, reviewing the provisions of the act of June 10, 1890, held that where the value of the goods determines the question whether they are to pay specific or ad valorem duty, appraisement is essential, and that it is to be expected that the statute should require the importer himself to state the value of his goods faithfully and truthfully, and to enforce that requirement by appropriate penalties. The court said : " We see no reason for restricting the broad language of the statute, and concur with the Judge who heard the case in the Circuit Court, that the statutes require that all imports be entered at fair value, and that the provision for increasing duties for undervaluations of more than ten per centum makes no distinction between specific and ad valorem duties, or between undervaluations that may affect the amount of regular duties and those that will not."

This case was under another statute, in somewhat different terms, but the reasoning upon which that decision went is that which we have pursued in the present case, and meets with our approval.

*Our conclusion is that the questions certified to us by the Judges of the Circuit Court of Appeals should be answered in the affirmative, and it is so ordered.*

MR. JUSTICE PECKHAM dissented.