ASCHER Co. *et al. v.* UNITED STATES (No. 824).[1]

DUTY ON USUAL CONTAINERS OR COVERINGS.

The duty on goods of the character here involved is required by subsection 18, section 28, tariff act of 1909, to be assessed on the actual market value or wholesale price thereof at the time of exportation to the United States in the principal markets of the country whence they were exported; and "value," as employed in paragraph 448 of that act, must be taken to be the same with the actual market value described in said subsection 18.

United States Court of Customs Appeals, May 31, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26335 (T. D. 31813).

[Affirmed.]

*Comstock & Washburn* for appellants.

*William L. Wemple,* Assistant Attorney General (*Frank L. Lawrence* and *William A. Robertson,* special attorneys, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain goods imported at the port of Chicago were classified by the collector of customs as jewelry set with imitation precious stones and assessed for duty at 85 per cent ad valorem, under the provisions of paragraph 448 of the tariff act of 1909, which, in so far as it is material to this case, reads as follows:

448. Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished, if set with imitation precious stones composed of glass or paste (except imitation jet), or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal, whether or not enameled, washed, covered, plated, or alloyed with gold, silver or nickel, and designed to be worn on apparel or carried on or about or attached to the person, *valued at twenty cents per dozen pieces, one cent each and in addition thereto three-fifths of one cent per dozen for each one cent the value exceeds twenty cents per dozen;* * * * rope, curb, cable, and other fancy patterns of chain, without bar, swivel, snap or ring, composed of rolled gold plate or of silver, German silver, white metal, or brass, not exceeding one-half of one inch in diameter, breadth or thickness, *valued at thirty cents per yard, six cents per foot, and in addition thereto three-fifths of one cent per yard for each one cent the value exceeds thirty cents per yard;* finished or unfinished bags, purses and other articles, or parts thereof, made in chief value of metal mesh composed of silver, German silver, or white metal, valued at

---

two dollars per dozen pieces, *ten cents per piece and in addition thereto three-fifths of one cent per dozen pieces for each one cent the value exceeds two dollars per dozen;* all of the foregoing, whether known as jewelry or otherwise and whether or not denominatively or otherwise provided for in any other paragraph of this act, *twenty-five per centum ad valorem in addition to the specific rate or rates of duty herein provided;* all articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semi-precious stones, or imitations thereof, sixty per centum ad valorem.

Under the provisions of subsection 18 of section 28 of said act the collector assessed 85 per cent ad valorem on the value of the goods, in which value was included the value of the cartons, cases, and boxes and the costs and charges incident to placing the merchandise in condition, packed ready for shipment to the United States.    Subsection 18 of section 28, in the part material to this issue, reads as follows:

SEC. 18. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, * * *. That the words "value," or "actual market value," or "wholesale price," whenever used in this act, or in any law relating to the appraisement of imported merchandise, shall be construed to be the actual market value or wholesale price of such, or similar merchandise comparable in value therewith, as defined in this act.

The importers protested that the combined specific and ad valorem rates provided for in paragraph 448 should not have been imposed upon the cartons, boxes, wrappers, coverings, or packages containing the merchandise, or upon the costs, charges, and expenses referred to in subsection 18 of section 28.   In that behalf it was claimed that the coverings and containers of the merchandise, and the costs, charges, and expenses just referred to were dutiable only at 25 per cent ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

As we see it, there is but one question in this case, and that is, Shall the ad valorem rate prescribed by paragraph 448 be laid upon one value of the merchandise and the specific rates upon another and different value?   In effect, the importers contend, first, that the rate of 25 per cent ad valorem attaches to the *per se* value of the merchandise, plus the costs, charges, and expenses of packing ready

for shipment, and the value of the cartons, boxes, or other containers or coverings of the merchandise; and, second, that the specific rates should be imposed on the *per se* value of the merchandise exclusive of the value of containers or coverings and of costs, charges, and expenses of packing. We can not agree with this contention. The duty on goods of the character here involved is required by the provisions of subsection 18 of section 28 to be assessed on the *actual market value or wholesale price thereof* at the time of exportation to the United States in the principal markets of the country from whence exported. Hoeninghaus *v.* United States (172 U. S., 622); Saxonville Mills *v.* Russell (116 U. S., 13, 18, 20, 21).

Congress took special pains to define actual market value, and in terms declared in the subsection referred to that—

Such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, *including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings,* whether holding liquids or solids, *and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.*

From this it would seem that the duties provided for the goods by paragraph 448 should be imposed upon the actual market value thereof as actual market value is defined in subsection 18 of section 28. Of course if the word "valued" in that part of paragraph 448 calling for specific rates of duty on the merchandise does not mean actual market value, then the requirements of subsection 18 would not apply. The door on that argument, however, seems to be closed by the fact that in subsection 18 it is expressly declared—

That the words "value," or "actual market value," or "wholesale price," whenever used in this act, or in any law relating to the appraisement of imported merchandise, shall be construed to be the actual market value or wholesale price of of such, or similar merchandise comparable in value therewith, as defined in this act.

We, therefore, do not see our way clear to holding that the values upon the basis of which specific rates of duty are laid in paragraph 448 differ in any way from actual market value, as that term is understood in subsection 18. In fact, to hold that the word "value," as used in paragraph 448, is not the actual market value as defined in the subsection would be to fly in the face of the direct mandate of the statute that "value" wherever found in the act must be construed to be the actual market value as therein defined.

The specific rates of duty imposed by section 448, curiously enough, in every case figure out 60 per cent ad valorem, and if the injunction of the paragraph is literally followed that rate must attach to the goods described in every case, no matter what their value may be. Assuming that it was the true intent of paragraph 448 to assess the

duties therein prescribed on the basis of actual market value, Congress, by imposing the several specific rates contained in the paragraph, certainly did indulge in considerable circumlocution to accomplish a purpose which might have been just as well achieved by subjecting the merchandise to a flat rate of 85 per cent ad valorem instead of the compound rate which it elected to impose. From this it is argued by the appellants that Congress must have had some motive for providing that the merchandise of paragraph 448 should bear both a specific and an ad valorem rate of duty, and that as Congress can not be presumed to have intended to conceal the rate, its action in that behalf must be taken as indicative of its intention that the specific rates of duty prescribed should attach to the *per se* value of the goods. We do not think that the conclusion follows from the premises laid, and prefer to accept the statutory definition of "value," clearly and unmistakably expressed, rather than infer some other definition, because Congress preferred circuity to directness in imposing the rate.

The fact that the collector of customs did not impose a duty of 1 cent each on the articles imported and three-fifths of 1 cent for each cent that the value exceeded 20 cents, but preferred to levy on the dutiable value of the merchandise a rate of 85 per cent ad valorem, which covered all the duties specified in paragraph 448, does not affect the validity of the assessment. As already stated, in every case the specific rate of duty must amount to 60 per cent ad valorem, which, added to the ad valorem rate of 25 per cent, makes up the full rate of 85 per cent assessed by the collector of customs.

The decision of the Board of General Appraisers is *affirmed.*