## UNITED STATES v. McNAB CO.

### (District Court, D. Connecticut. June 24, 1924.)

#### No. 2164.

1. **Customs duties ⬅➡77—Good faith not a defense to action for additional duty assessed for undervaluation.**

   In an action to recover the additional duty assessed against merchandise for undervaluation, under Tariff Act 1913, § 3, I (Comp. St. § 5527), the good faith of the owner or consignee and absence of any fraudulent intent are immaterial.

2. **Customs duties ⬅➡65, 77—Value of articles in free list must be declared, if of a class subject to ad valorem duty.**

   That merchandise is entered free of duty does not exempt the importer from declaring its value, if it is within a class subject to ad valorem duty, nor from the imposition of additional duty for undervaluation, under Tariff Act 1913, § 3, I (Comp. St. § 5527), though the article is entitled to free entry under another provision of the act.

3. **Customs duties ⬅➡68—To secure free entry of materials used in shipbuilding, they must be imported in bond.**

   To secure free entry of materials necessary for the construction, outfit, or equipment of vessels named in Tariff Act 1913, § 4, J, subsec. 5 (Comp. St. § 5309), they must be entered in bond under regulations of the treasury Department, and proof subsequently made that they have been so used, and a mere claim for free entry at the time of importation, is not sufficient.

4. **Customs duties ⬅➡96—Interest is recoverable on duties collected by suit.**

   Interest from date of liquidation is recoverable on additional duties collected by suit.

5. **Customs duties ⬅➡94—Settlement of claims for duties held not to include those in suit.**

   A compromise and settlement of claims of the Treasury Department against defendant for additional duties *held* not to include the claims in suit.

At Law. Action by the United States against the McNab Company. Judgment for plaintiff.

Allan K. Smith, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn.

Marsh, Stoddard & Day, of Bridgeport, Conn., for defendant.

THOMAS, District Judge. This suit is brought to recover additional duties which the government claims have accrued in connection with two importations of certain equipment for vessels. The case has been submitted on the pleadings and an agreed statement of facts. The first importation was made into the city of New York about May 22, 1916, on the steamship St. Louis, from the city of Liverpool, England. The second was made on or about June 7, 1916, on the steam-

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ship Philadelphia, from Liverpool. Each importation consisted of two cases of whistle control gears.

The complaint alleges that the defendant entered the first importation at a valuation $222 and the second importation at a valuation of $260. It is then alleged that the appraising officer appraised each importation in accordance with the value thereof specified in the entry; that the collector of the port of New York appealed from that appraisement to a reappraisement by a general appraiser; that the general appraiser, on such appeal, established the valuation of each importation at $584; that the defendant did not take an appeal; and that thereafter the duty on the said importations was liquidated by the collector of customs, resulting in an additional duty on each importation of $438, which was 75 per cent. of the value established by the general appraiser. Judgment is demanded in the sum of $876, and interest, for the additional duties claimed in connection with both importations.

In its answer to the complaint the defendant pleaded three defenses to the cause of action based on each of said importations. In the first defense it is alleged that the importation was required in the outfit and equipment of naval or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade; that said importations were made for that purpose; that on September 6, 1917, the defendant offered proof, and has since been ready and willing to prove, that the said importations have been used for such purpose. In the second defense it is alleged that on September 6, 1917, defendant offered to prove, and has since been ready and willing to prove, that the said importations were foreign materials necessary in connection with the construction, building, outfit, and equipment of vessels mentioned in the first defense, and that the importations have been used for that purpose. In the third defense it is alleged that on or about November 15, 1916, the entire civil liability of the defendant to the government, arising from the two importations in question, was settled and compromised by the defendant paying to the government, through the collector of customs at New York the sum of $758.20, and through the collector of customs at Bridgeport the further sum of $44.10.

From the agreed statement of facts it appears that the two importations were made as has been stated, and that they were respectively entered at the values set forth in the complaint; that both importations were made for the installation in the construction of new vessels built in the United States, and were regularly entered free of duty under section 4, paragraph J, subsection 5, of the Tariff Act of 1913 (Comp. St. § 5309); that the valuations made in connection with the entry of the two importations represented the actual manufacturing cost to the manufacturer, a practice which had been customarily followed in reference to prior importations; that the defendant, its agents, and the manufacturer all acted in good faith and without any intent to defraud the United States in making the entry of each importation at the valuation stated in the complaint; that the collector of the port of New York caused a reappraisement by a general appraiser of the merchandise comprised in each of the importations in question; that

the general appraiser established the valuation of $584 for each impor-
tation, as alleged in the complaint; that the defendant did not appeal
from this decision; and that thereafter, and on or about July 1, 1917,
the collector of customs liquidated the duties and ascertained that there
was due on each importation an additional duty in the sum of $438,
that being 75 per cent. of the valuation as established by the general
appraiser; and that defendant has refused to pay these additional
duties.

The importations in question were dutiable, except for the free entry
under section 4, par. J, subsec. 5, of the Act of October 3, 1913, and,
unless these importations were entered free of duty under that pro-
vision of the act, a duty within the classes specified in section 3, par. I,
of the said act (Comp. St. § 5527), would have accrued and been pay-
able thereon.

[1] Defendant was obliged to enter these importations at their ac-
tual market value as defined by the act, and if they were undervalued
in the entry thereof as the result of any cause, other than manifest
clerical error, the additional duty specified in the act then accrued. In
this case it appears clearly that the undervaluation did not result from
any manifest clerical error. The appraised value established on the
collector's appeal in connection with the importations in question ex-
ceeded the entry value of them by more than 75 per cent. The defend-
ant is therefore liable to the payment of 75 per cent. of the appraised
value established on each importation. This amounts to additional
duty of $438 on each importation, or a total of $876 on both impor-
tations. Act Oct. 3, 1913, § 3, par. I.

The defendant's intent in connection with the undervaluation is im-
material, as was held in United States v. Bishop, 125 Fed. 181, on page
186, 60 C. C. A. 123, 128, where Judge Sanborn, speaking for the Cir-
cuit Court of Appeals for the Eighth Circuit, said:

"Neither the guilt nor the innocence nor the intent of the owner or of
his agent forms any condition or element of the action to collect these du-
ties. The importation of the merchandise and the undervaluation are the
only essential facts which condition the right of the government to recover
the duties from the consignee under this section of the statute."

And further on page 187 (60 C. C. A. 129):

"But an action to recover the additional duties accruing upon an under-
valuation may be maintained against the consignee, * * * in the absence
of any fraudulent intent by the consignee, the ower, or the agent. Good faith
and innocence constitute no defense to such an action. U. S. v. 1621 Pounds
of Fur Clippings, 106 Fed. 161, 162, 45 C. C. A. 263, 264; Gray v. U. S.,
113 Fed. 213, 216, 51 C. C. A. 170."

The same rule, it appears, was adopted by the Circuit Court of Ap-
peals for the Second Circuit in the Gray Case, just cited.

It affirmatively appears that no appeal was taken by defendant from
the valuation established on the appeal taken by the collector, and the
valuation so established is therefore conclusive against the defendant.
Act Oct. 3, 1913, § 3, par. M (Comp. St. § 5594).

[2] It is argued on defendant's behalf that, inasmuch as the goods
included in the two importations in question were entered free of duty,
it is immaterial that the goods were undervalued, inasmuch as no duty

would accrue to the government upon a higher valuation being established. It is well settled, however, that this view is erroneous, where the importations are within a class subject to an "ad valorem duty or to a duty based upon, or regulated in any manner by the value thereof," and it is immaterial that an undervaluation of such importations results in no loss of revenue to the government and no benefit to the importer. This is within the principle enunciated by the Supreme Court in Hoeninghaus v. U. S., 172 U. S. 622, 19 S. Ct. 305, 43 L. Ed. 576, as is pointed out by Mr. Justice Shiras on page 628 (19 Sup. Ct. 307), and speaking in conclusion of the effect of such principle, on page 629 (19 Sup. Ct. 307), he said:

"The administration of such laws cannot be narrowed to a consideration of every case as if it stood alone, and as if the only question was whether there was an actual intention to defraud the government. Wide and long experience has resulted in the command that all importations of merchandise must be accompanied with a true and correct invoice, stating the cost or market value. Like other importers, the present appellants must comply with this command, and, if they have failed to do so, they must be.held to be subject to the additional duty imposed by the statute. If the statutory regulations are found to be too stringent, the remedy cannot be found either in the courts whose duty is to construe them, or in the executive officers appointed to carry them into effect, but in Congress."

It is also argued on behalf of defendant that the additional duties assessable under section 3, par. I, of the Act of October 3, 1913, do not apply to importations under section 4, par. J, subsec. 5, of that act, relating to the free entry of materials required in connection with the construction, outfit, and repair of vessels. These two paragraphs of the Tariff Act are independent of each other. The additional duties arise from undervaluation in entries resulting from any cause other than manifest clerical error. It is clear from the phraseology of the section of the act imposing these additional duties (section 3, par. I) that they were not to be released or canceled by the entry of merchandise free of duty under section 4, par. J, subsec. 5, of the act. Section 3, par. I, of the act, in this connection, provides:

"Such additional duties shall not be construed to be penal, and shall not be remitted nor payment thereof in any way avoided except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback."

Section 4, par. J, subsec. 5, of the act, provides for the entry of the merchandise free of duty under certain circumstances, and it does not purport to affect additional duties in any way whatever. It is clear from the statute that Congress had no intention of permitting liability for additional duties to be avoided by a right of free entry under the other provision of the act.

It is therefore no defense to this action for collection of additional duties to show that the importations upon which the additional duties were assessed were entered free under section 4, par. J, subsec. 5, of the act. Therefore defendant's first and second ·defenses, which were founded upon the free entry of the merchandise under this provision of the statute and the defendant's alleged offer and readiness to prove compliance with this section of the statute, are insufficient to

protect the defendant from liability for the payment of the additional duties.

[3] The first and second defenses have not been sustained in fact, inasmuch as there is absolutely no evidence before the court that, after the actual entry of these two importations, the procedure required for securing and perfecting the free entry thereof was followed by the defendant. It is not sufficient to secure the free entry under section 4, par. J, subsec. 5, of the Act of October 3, 1913, in order that a mere claim for free entry be made under that provision of the act at the time that the goods are admitted. That provision of the act did not give defendant the right to import the articles in question absolutely free of duty, but merely gave defendant the right to make these two importations conditionally free of duty, "in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes, no duties shall be paid thereon."

Pursuant to this authority the Secretary of the Treasury prepared and promulgated regulations which prescribed in detail the procedure to be followed in connection with importations free of duty under section 4, par. J, subsec. 5, of the act. These regulations are articles 404 et seq. of the Customs Regulations of 1915. There is no evidence in this case that the defendant ever complied with the provisions of these regulations, nor is there any proof that the defendant ever offered to the collector within the time prescribed thereby any proof establishing the defendant's right to the free entry of these importations. However, such proof would have been immaterial for the reasons stated.

[4] Unless, therefore, the liability has been compromised or adjusted, defendant is clearly liable for the payment of these additional duties with interest from the date of their liquidation. That interest is part of the debt, see U. S. v. Mexican International R. Co. (C. C.) 154 Fed. 519, and U. S. v. Urmston (C. C.) 154 Fed. 522. In the former case, after full discussion of the cases, Judge Maxey concludes that upon principle and authority duties should bear interest.

[5] We come, then, to the remaining question: Was the liability compromised or adjusted? The defendant alleges that its civil liability in connection with these two importations was settled and compromised with the government on or about November 15, 1916. In support of this defense it appears that on or about November 1, 1916, the government made a claim for certain duties against the defendant in connection with two previous importations of merchandise, similar to that which is in question in this case. It also appears that a customs agent and a special deputy collector examined certain of defendant's records in connection with that claim, and that thereafter negotiations were had between these officials and the defendant's attorneys for "the adjustment of such duties as were payable." The defendant, in support of this defense of compromise and adjustment, relies on the fact that both the customs agent and the special deputy collector became, during the course of the negotiations relating to the prior importations, familiar with the facts relative to the two importations in question in the case at bar.

On November 15, 1916, the defendant, through its attorneys, wrote. a letter to the collector of customs at New York, inclosing a certified check for $758.20. This letter is set forth in full in the agreed statement of facts. In the second paragraph of this letter "certain errors in declarations on importations" are mentioned, with a statement that the certified check inclosed is tendered "in compromise of the civil liabilities for the practices complained of." The letter then proceeds to state that "the above amount has been arrived at in the following manner." Then follows a particular statement of importations *other* than those in question in the case at bar, with entry numbers for such different importations and a computation of the duties on such different importations to the exact amount of the check inclosed in the letter. Certainly, up to this point in the letter upon which defendant relies, there was no notice that the check was being tendered in settlement of any claims other than those specifically mentioned. The letter also did not refer to *all* errors in declarations, but did expressly refer to "*certain* errors," and the check was tendered in settlement "for the practices complained of," and not for *all* such practices. After computations aggregating the amount of the check inclosed in the letter, an explanation showing extenuating circumstances was then made. The letter then concludes with the following paragraph:

"All of the controls imported by the McNab Company have been of design No. 1, with the exception of the one entered on New York entry 4165, which is of design No. 2. We make the tender of the sum of $758.20 to the Treasury Department on the understanding that, if the same is accepted, there will be released to us the one whistle control covered by entry 4165, which is at present in your custody, and also with the understanding that this tender, together with the further tender to the collector of customs in Bridgeport of the sum of $363.10, covers the entire civil liability of the McNab Company to the government on account of importations of Willett Bruce whistle controls up to the present time."

It is contended on behalf of defendant that the check inclosed in that letter was tendered in full settlement of all the defendant's civil liability to the government down to the date of the letter, and in this connection it is argued that this part of the letter contains an express statement of the condition upon which the tender was made. In the opening of the letter, however, as pointed out above, the purpose of the tender was expressly stated. The statement of the conditions of the tender in the concluding paragraph of the letter, above set forth in full, does not change the purpose of the tender as stated in the opening of the letter. The language in the concluding paragraph is not so explicit as to the satisfaction of claims on *all* importations that it can be given that construction. By the context of the letter, the reference in the concluding paragraph to "the entire civil liability of the McNab Company to the government on account of importations of Willett Bruce whistle controls up to the present time" seems to be clearly limited to the merchandise of that description previously specifically mentioned in the letter as the basis for the calculation of the check enclosed therein.

It is unnecessary, however, to decide this defense on a mere construction of this letter, for it clearly appears that the customs agent and special deputy collector, who had knowledge of the matter, had no authority to settle it or compromise it, had they made any attempt

to do so. U. S. Comp. St. § 6375. This mere knowledge and familiarity with the government's claims upon the two importations in suit have no bearing on the defense based on the alleged compromise. In this connection it should be noted that the valuation of the two importations in question, established on the appeal by the collector, was established by and under the general appraiser's decision made on or about November 21, 1916, and about a week *after* the date of the letter upon which defendant relies in support of the alleged compromise. This fact would seem to completely refute defendant's claim. Customs Regulations of 1915, art. 927, refer to the compromise of disputed claims in favor of the government. By this article it is provided, inter alia, that an offer of settlement made to the government must comply with the following provisions:

"The amount offered and the terms on which the offer is made should be in writing and limited to the civil liability of the proponent in the matter or matters the subject of the government's claim."

If the defendant had intended to compromise any other claim of the government than those which were specifically enumerated in its said letter, it should have included a description clearly identifying the said claims in the letter, and it should also have clearly specified that the offer of compromise was made on condition that all the claims of the government enumerated would be released. Considering the multitudinous entries of merchandise, and the many claims of the government in connection therewith, it is reasonably necessary for the dispatch of the government's business that all offers of compromise should clearly identify the particular claims made by the government which it is sought to settle. The letter on which defendant relies was not sufficiently clear and explicit to work a release of the claims in question in the case at bar.

Judgment may be entered for the plaintiff to recover $876, with interest from July 17, 1917, with costs; and it is so ordered.